Sutliff, J.
The certificates were issued under section. 1, of the act of congress referred to, which provided as-follows :
“That in all cases where public lands have been purchased, on which further credit has not been taken, under the provisions of the act of the second of March, one thousand eight hundred and twenty one, and have reverted, or are liable to revert, to the United States, it shall be the duty of the register of the land office where the purchase or deposit was made' *587 to issue, upon application, to the person or persons legally entitled to the benefit of the payments made previous to such reversion or sale, his, her or their legal representatives, or assigns, a certificate for the amount so paid, and not refunded, which shall be received and credited as cash, in payment of any public land that has been heretofore, or may hereafter be sold by the United States, in the State, or territory, in which, such original purchase or deposit was made.”
There is nothing in the act authorizing, in terms, the assignment of the certificates. The object of the act seems to have been to so far remit the. forfeitures which had occurred, on account of full payment not having been made, as to secure to the party, so having incurred and sustained the forfeiture and loss, a fair equivalent in other lands within the same State, or territory, in which the lands had been so lost, and in case of his death, to his heirs or legal representatives.
Each of the certificates in this case recites the fact of the payment having been made by John Smith deceased, makes special reference to the act of congress under which issued, for its object, intent and value. The certificate purports, upon its face, to be issued to Mary B., Harriet L., and Ann E. P. Lowrey (minors), “ for themselves, and in trust for the other heirs of John Smith deceased.
The certificates had no other force or legal effect than that derived from the act under which issued ; and as special reference to the act is made in the certificates, all parties, having to do with them, were, in law, bound to know the provisions of this act of congress, in relation to the certificates.
It must, in this case, therefore, be presumed that all parties understood the provisions expressed by Sec. 5: “That in no-case shall a certificate be issued to any person, except 'to the-person who originally forfeited the lands, or to his heir or' heirs.”
But the certificates in this case, on their face show that' there were, in fact, other heirs than the minor heirs to whom-the certificates were issued, and their rights to the certificates,, as co-heirs, is clearly expressed by the words, “ and in trust for the other heirs of John Smith.”
*588 The registrar could not, by the form of his certificate, impart to it a negotiable character, or any other property or ■effect beyond, or inconsistent with, that expressed by the act which determined its object and effect,- and directed its issue.
The acts of the registrar, were merely the official acts of a ministerial officer, in issuing the certificate. It was not competent for him to impart any powers to the parties to whom he issued it. But inasmuch as he saw fit to issue the certifi■cate to certain of the heirs, when there were ■ other unknown .heirs, it was very proper that fact should be expressed upon the certificate, as an express appropriation of its property, and •interest to the unknown, as well as to the known heirs. So, •too, of the foot note upon the certificates: “The indorsement to be executed, or concurred in, by Fielding Lowrey, guardian of said heirs.” — It was certainly proper that- a certificate .issued to minors should not be appropriated by sale, or in any way transferred from them, without the approbation of their guardian.
Indeed it would not be singular, that the registrar, in the absence of any law upon the subject, either authorizing or restraining the assignment of these land certificates, should regard them, as in that respect analogous to land warrants which were made assignable. They were to be received at the land •office, in payment for land, in the same manner as warrants, ■.and patents to be issued in like manner therefor.
Independent of this foot note upon the certificate, it is not pretended that Fielding Lowrey, or his minor children, had the power, either by the certificate or any existing law, to sell and assign the interests of the 'absent heirs in the certificate. The certificate is simply expressed to be “ issued to Mary B. Lowrey, Harriet L. Lowrey and Ann E. P. Lowrey, minors, for themselves, and in trust for the other heirs of John Smith deceased.” The effect of this language would have been the same, I apprehend, if it had been expressed, that the respective interests of the heirs named, were to be held in their own rights, and the interests of the unknown ■heirs were to be held subject to their demand. These heirs «o holding these certificates issued for, and the joint property *589 of all the heirs of John Smith, the interest of all the heirs-appearing, as it did, upon the certificates, have neither the-right nor the power to sell and appropriate by assignment, the-interest of the unnamed heirs therein, to a stranger or third-person, without the knowledge and consent of such unnamed heirs.
But in this case, from the indorsement on the certificates,, and the recitals in the contract of Fielding Lowrey with Stoddard and others, the assignment and transfer of the certificates appear to have been made by Lowrey, and not by the-heirs; the names of the minor he rs, his wards, seem to have-been written by him, under which, he has subscribed “ Fielding Lowrey, guardian for said heirs;” but he does not assume-to be the guardian of the unnamed heirs, or to have or exercise any powers in their behalf. The indorsement does not even recite a sale. The language is simply this: “ Transferred to Henry Stoddard,” ... “ for value received.” If, then, the-certificates before the transfer were held in trust for the absent heirs, in part, and so known to be by the party receiving them, they would continue to be so held, after the transfer,, by the party taking them. The case does not, therefore, appear to be what is claimed by counsel for plaintiff in error,, that of a sale of the entire certificate by the trustees holding-it in trust, with power to sell and convey.
The contract which particularly shows the object of this transfer, is simply an agreement between Lowrey, the guardian of the named heirs, and his associates, to use the certificates in entering lands, but to take the title in the name of Stoddard, and to sell the lands, and share among themselves the profits of the enterprise; placing, from the proceeds, or otherwise, the amount of the certificates in the hands of said Lowrey, as an equivalent for the certificates so used. If Lowrey could legally thus deal with the certificates which he so held as guardian of his wards, or with their interest therein, which he so held in trust for them, it must certainly be regarded as an exception to the general rule, that a trustee is not allowed to speculate in the trust. “ The power of a trus-tee over the legal estate or property vested in him, properly* *590 speaking, exists only for the benefit, of the cestui que trust ” Story’s Equity, sec. 977. And it is difficult to perceive how .he could, by associating with him others having notice of the trust, at all change the relations, the liabilities, or rights of parties, in regard to the trust. It is true, the power which a trustee can, in law, exercise over the trust property, may, .in fact, transcend his duties and powers as between himself and the cestui que trust. He may, as the legal owner, dispose of the property, to the prejudice and loss of the latter, to a bona fide purchaser, under circumstances rendering himself -personally liable for mal administration, or fraud; and still, the purchaser may have acquired a perfect title, and be in no way responsible to the party injured thereby. But, where a conveyance is made under such circumstances to an alienee having notice of the trust, the trust attaches to the property, the same as if it had remained in the hands of the trustee.
It is possible that, in this case, there may have been circumstances, or necessities of his wards, which, in the judgment of their guardian, may have rendered it for their interest, and which would justify him in the discharge of the duties of his trust, to convert their interest in this scrip into money. And while there is nothing in the record before us, showing such a state of circumstances, nor even an allegation of the fact, in the case of Davies and others v. Dowrey and others, 15 Ohio Rep. 655, the court seem to have so found, in the record there presented.
That case was one presenting the question of trust between the named heirs in these certificates, as plaintiffs, and Lowrey, Stoddard, and thoir associates, the purchasers of the ■ lands, as defendants. The certificates were probably not before the court in that case ; as in the statement of the facts of the case, it is there represented that the scrip “ upon the face of it was made assignable.” > And another fact which is not in this case, seems to have been a controlling one in that. Fielding Lowry, who, it was claimed, sold the interests of .those plaintiffs in the scrip to the defendants, was the guar-dian of those plaintiffs at the time of the transfer by him, ■■■and at the time of receiving from them the price agreed upon; *591 and it does not, in that case, appear but that there was a necessity for the money, and that the heirs had not had the full benefit of the same. While, therefi re, we can not concur in the reasoning of the court, nor in certain propositions laid down in that case, especially in relation to the character of the land scrip, and the right of the guardian to invest the scrip for himself in lands, and claim the right to hold the ■same against his wards without accounting, yet we do not deem this' case as resting upon the same state of facts. Lowrey was not the guardian of these defendants.
The only difference, as it appears to me, between these certificates and land warrants, if issued to the same parties in place of the scrip, is, that while both, in such case, would be undertakings on the part of the general government to pay lands to the parties in whose favor issued, the certificates were expression of lands in value, the warrants would have been expression of lands in quantity. Each alike would have only entitled the parties to lands; with perhaps this additional difference in favor of the plaintiffs, that the warrants would have been by law assignable, whereas we have seen the act under which they were issued, does not make the certificates assignable.
It is unnecessary to determine whether, in this case, an order of sale, made by a court having competent jurisdiction, might not have authorized a sale by the guardian of the parties in interest, which would have given a title to the purchasers of this scrip, to which no trust would longer attach. Nor is it necessary to express any further opinion upon the power of the named heirs, as trustees, to sell. If they had been the legally constituted trustees of the unnamed heirs, and holding their interests in trust to sell, it is not doubted but that the exercise of their powers, although they were minors, would have been conclusive upon the plaintiff’s right against bona fide purchaser’s. But neither of these cases is presented by this record.
The transfer of the interests of these plaintiffs in the scrip, as clearly appears from the record, was made by Lowrey in his own right, and as guardian of other heirs, and other par *592 ties in interest; and the scrip was received and used in the-purchase of the lands by Stoddard and his associates, including Lowrey, with full notice of the facts as shown by the-certificates and the law under which they were issued. Under, these circumstances, we have no hesitation in holding that the trust attached to the lands when purchased, as evidently as it would in case Lowrey himself, while holding land-warrants or land scrip belonging to the plaintiffs, had used them by entering the lands in his own name.
Nor is it necessary to rest this case upon the character of the land certificates used in the purchase of the land. If instead of land scrip, it had been bills of exchange, or other-negotiable securities, or money held by Lowrey belonging to-these plaintiffs, and the same had been used by him, or by himself and associates, having notice of the fact, in the purchase of the lands, and payment of the purchase money thereby made, the title being conveyed to the purchasers, or either of them, as in this case, a resulting trust would necessarily have-arisen in favor of the parties whose funds had been so invested. And the plaintiffs would in such case have had their option, either to recover the value of the fund in money, or to enforce-the trust in the lands. The case would still be one of that class of cases in which, it is said, a court of equity may act by creating a trust in invitum. Indeed, it may be regarded-as a general rule, that in all cases where a party purchases trust property, knowing it to be such, from a trustee, courts of equity, when called upon, will force the trust upon the conscience of the delinquent intruder upon the trust, and. compel him to perform it, and to hold the property subject to the trust, in the same manner that it was before held by the trustee. •
The pendency of the action in Montgomery county, mentioned in the record, constituted no bar to the plaintiffs below prosecuting their rights of action as asserted in their cross bill in this case.
We perceive no error in the record, nor in the decree entered by the district court upon the final hearing; and that *593 court, therefore, very properly dismissed the bill of review» The judgment of the district court is therefore affirmed.
Scott, O.J., and Peck, Gholson and Brinkerhoee, JJ.,, concurred.